UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRY VANDIVER,

        Plaintiff,

Case No. 1:06-cv-547

Hon. Gordon J. Quist

vs.

CORRECTIONAL MEDICAL
SERVICES, INC., *et al.*,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is before the court on defendants' Correctional Medical Services, Inc. ("CMS") and Craig Hutchinson, M.D.'s (Dr. Hutchinson's) motion to dismiss (docket no. 13) and defendant Mark West's motion for summary judgment (docket no. 28).

    **I.**    **Introduction**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

### A.     Plaintiff's allegations

Plaintiff's claims arise from events that occurred in 2001 at the Duane L. Waters Hospital in Jackson, Michigan. Plaintiff sets forth the following facts in his verified amended complaint. On February 2, 2001, plaintiff saw a podiatrist, Matthew A. Page. Amend. Comp. at ¶ 24. Dr. Page issued a recommendation for "special shoes" because plaintiff had an increased risk of infection due to diabetes. *Id.* On or about February 13, 2001, Michigan Department of Corrections ("MDOC") medical employees informed plaintiff that a doctor had reviewed Dr. Page's treatment recommendation and denied treatment. *Id.* at ¶ 25. As a result of this denial, plaintiff filed a grievance which he exhausted on June 4, 2001. *Id.* Several months later, on November 9, 2001, he had "emergency partial right foot amputation." *Id.* at ¶ 26.

In his amended complaint, plaintiff alleges that defendant CMS Correctional Medical Services, Inc. has adopted an "official municipal unconstitutional 'policy and customs'" which consists of "cutting costs and providing substandard medical care to prisoners[]." Amend. Comp. at ¶ 26. Defendants CMS and Dr. Hutchinson's execution of that policy resulted in the partial amputation of plaintiff's foot in November 2001. *Id.* at ¶¶ 26-30. Plaintiff appears to allege that defendants CMS and Dr. Hutchinson violated his Eighth and Fourteenth Amendment rights. *Id.* at ¶¶ 40-44, 47.

In addition, plaintiff alleges that defendant West violated the Americans with Disabilities Act (ADA), because plaintiff, a black prisoner, with insulin dependent diabetes did not receive a diabetic diet, while a white prisoner with similar insulin dependent diabetes received medical transfer order to be at a facility site with a dietician where he could receive a diabetic diet. *Id.* at ¶¶ 32-33. Plaintiff also alleges that defendant West denied him a diabetic diet in retaliation

for plaintiff filing suits against West's friend George Pramstaller, in violation of his First Amendment rights, and that West also violated plaintiff's Eighth and Fourteenth Amendment rights. *Id.* at ¶¶ 44-46. Plaintiff seeks injunctive relief and damages. *Id.* at pp. 19-20.

### B. Plaintiff's grievances

#### 1. Grievance URF 0509 1880 12I

On September 23, 2005, plaintiff filed a grievance against defendants Health Unit Manager Mark West (an MDOC employee), CMS and Dr. Hutchinson. *See* Grievance URF 0509 1880 12I. This grievance referred to plaintiff's contacts with defendant West and mentioned that Dr. Hutchinson had known about plaintiff's chronic condition since February 2, 2001, "when CMS failed to provide me with the specialty footwear" as recommended by Dr. Page. *Id.* Plaintiff claimed that Dr. Hutchinson and CMS were deliberately indifferent at that time, and their acts "resulted in the proximate cause of my partial right foot amputation of my first and second toes." *Id.* In the Step I response, the MDOC determined that "the partients [sic] issue is not timely as his concern spans greater than five years of treatment for poor circulation of his extremities." Grievance URF 0509 1880 12I, Step I Response. Nevertheless, the MDOC determined that plaintiff received appropriate care, noting "[r]eview of the patient's extensive health record reflects the patient was not compliant in the treatment of diabetes to include refusal of treatment and signing out of treatment against medical advice." *Id.* The MDOC denied plaintiff's appeals at steps II and III.

#### 2. Grievance URF 0602 0438 12H

Several months later, plaintiff filed another grievance on February 20, 2006, alleging a disability under the ADA. Specifically, he alleged that in a meeting on February 15, 2006, defendant West discriminated against him, apparently by telling plaintiff that it was plaintiff's

responsibility to get his diabetes controlled "with moderation of food choice and the proper exercise." *See* Grievance URF 0602 0438 12H. The MDOC determined that plaintiff's claim was not credible, noting that defendant West was not at the facility on February 15, 2006. Grievance URF 0602 0438 12H, Step I Response. The MDOC noted that plaintiff did not make a legitimate attempt to resolve this issue. *Id.* In addition, the MDOC noted that a patient's need for a special diet is at the sole discretion of the Medical Service Provider ("MSP") and "[t]o date the MSP has not determined the patient['s] health care needs cannot be met" at his present facility. *Id.* The MDOC denied plaintiff's appeals at steps II and III.

### 3.     URF 0602 0437 12I

Plaintiff filed another grievance on February 20, 2006, alleging that on February 15, 2006, defendants CMS and Dr. Hutchinson implemented their official policy of "cutting costs by providing substandard care to MDOC prisoners." Grievance URF 0602 0437 12I. Plaintiff based his grievance, in part, on a memoranda from 1997 regarding the ordering of orthopedic and soft soled shoes for prisoners. *Id.* The MDOC determined that this grievance was a duplicate of Grievance URF 0509 1880 12I. *See* Grievance URF 0602 0437 12I, Step I Response. In addition, the MDOC determined that the February 15, 2006 date referenced in the grievance related to a nurse's evaluation of "callus [sic] formation" on the amputated portion of plaintiff's right foot, and that he was evaluated by an MSP the next day. *Id.* The MDOC further determined that the 1997 occurrence was not within an acceptable time frame for grievance resolution. *Id.* The MDOC denied plaintiff's appeals at steps II and III, noting that the grievance was also rejected as a duplicative grievance under MDOC, Policy Directive 03.02.130.

### 4.      Grievance URF 0602 0476 12I

Finally, plaintiff filed a grievance on February 26, 2006, which related to incidents that allegedly occurred on February 19th and 24th. Grievance URF 0602 0476 12I. The incident referred to in the grievance was ostensibly a "talk" with Nurse Theresa on February 19, 2006. *Id.* The grievance does not list any event that occurred on February 24, 2006. The grievance appears to contain a variety of general complaints of inadequate treatment by defendants, including the denial of influenza vaccinations. *Id.* In addition, plaintiff refers to defendant West's statements that he is being denied medical treatment because he filed a lawsuit against West's friend, George Pramstaller. *Id.* The MDOC determined that this grievance was duplicative of two other grievances (i.e., URF 0602 0437 12I and URF 0509 1880 12I), that plaintiff had no health visits on the incident dates of February 19 and 24, 2006, that Diabetes Chronic Care Clinic patients were not part of the criteria for vaccination for influenza, and that the allegations against defendant West were untrue. Grievance URF 0602 0476 12I, Step I Response. The MDOC denied plaintiff's appeals at steps II and III, noting that plaintiff violated MDOC, Policy Directive 03.02.130 by filing a vague grievance and that his grievance included unrelated issues.

### III.     Motion to dismiss filed by defendants CMS and Dr. Hutchinson

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In *Woodford v. Ngo*, -- U.S. --, 126 S. Ct. 2378 (2006), the Supreme

Court stated that "the PLRA exhaustion requirement requires proper exhaustion." *Woodford*, 126 S. Ct. at 2387 (emphasis added). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 2386. *See Jones v. Bock*, – U.S. --, 127 S.Ct. 910, 923 (2007) ("[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements . . . that define the boundaries of proper exhaustion"). For example, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a § 1983 action in federal court *Woodford*, 126 S. Ct. at 2382-93; 42 U.S.C. § 1997e(a).

The MDOC provides a grievance process which requires the prisoner to resolve the issue with the staff member, and then follow a three-step written grievance process. *See* MDOC Policy Directive 03.02.130 (effective 12/19/03). "[P]rior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control." *Id.* at ¶ R. "If the complaint is not resolved, the grievant may file a Step I grievance." *Id.* The Step I grievance must be filed within five business days "after attempting to resolve a grievable issue with staff." *Id.* at ¶ X. The MDOC Policy Directives state that

> The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Date, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ T.

Prisoners must "file grievances in a responsible manner." *Id.* at ¶ G. A grievance may be rejected for any of the following reasons:

1. It is vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant. . .

3. The grievant did not attempt to resolve the issue with the staff member involved prior to filing the grievance unless prevented by circumstances beyond his/her control.

4. The grievance is filed in an untimely manner. The grievance shall not be rejected if there is a valid reason for the delay, e.g., transfer.

*Id.*

The MDOC shall provide a response within 15 business days after receipt of the Step I grievance. *Id.* at ¶ Y. If a prisoner is dissatisfied with the Step I response, then he may request a grievance appeal form within five business days after receiving the response and file the Step II grievance within five business days after receiving the form. *Id.* at ¶ DD. The MDOC shall provide a response within 15 business days after receipt of the Step II grievance. *Id.* at ¶ EE. If the grievant is dissatisfied with the Step II response, he may send a completed Step III grievance to the Prisoner Affairs Section within 10 business days after receiving the Step II response. *Id.* at ¶ HH.

Here, defendants CMS and Dr. Hutchinson contend that plaintiff's suit should be dismissed because his grievances were untimely and unexhausted. The court agrees. Plaintiff's claims against these defendants arose from an incident that occurred in 2001, when defendants allegedly denied a podiatrist's recommendation for shoes. In his amended complaint, plaintiff claims that he filed grievances for this incident in 2001. Amend. Compl. at ¶ 25. But these are not the grievances underlying the present action against CMS and Dr. Hutchinson. The grievances relied upon by plaintiff to establish exhaustion are Grievances URF 0509 1880 12I and URF 0602

0437 12I, which were filed in September 2005 and February 2006, more than four years after the incident. The MDOC determined that plaintiff's grievances filed in 2005 and in 2006 were untimely with respect to both a memorandum issued in 1997 and a medical decision made in 2001. Plaintiff has not properly exhausted these grievances for purposes of filing a § 1983 action in federal court *Woodford*, 126 S. Ct. at 2382-93; 42 U.S.C. § 1997e(a).

Accordingly, plaintiff's claims against defendants CMS and Dr. Hutchinson should be dismissed for lack of proper exhaustion.

### IV. Defendant West's motion to dismiss or for summary judgment

As previously discussed, plaintiff referred to defendant West in two grievances. In Grievance URF 0602 0438 12H, plaintiff alleged that on February 15, 2006, he spoke with defendant West regarding his "poorly controlled" insulin dependent diabetic condition. The MDOC denied this grievance on various grounds including: the subject of the grievance, defendant West, was not at the facility on the alleged date of the incident; and plaintiff did not make a legitimate attempt to resolve the issue prior to filing a written grievance. Then, in Grievance URF 0602 0476 12I, the MDOC denied the grievance on various grounds including procedural defects: it was a duplicate of other grievances; vague; and contained multiple unrelated issues.

The court concludes that these requirements as set forth in Policy Directive 03.02.130 constitute other critical procedural rules necessary for proper exhaustion. *See Woodford*, 126 S. Ct. at 2386-87.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which means using all steps that the

> agency holds out, and doing so properly (so that the agency addresses the issues on the merits).

*Id.* at 2385 (internal quotations omitted).

The Supreme Court also pointed out that proper exhaustion serves the purposes of the PLRA:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have a fair opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prisoner grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . .

*Id.* at 2388.

Here, plaintiff failed to follow the MDOC's grievance procedure by: stating a false incident date with defendant West; failing to make a legitimate attempt to resolve the issue before filing the Step I grievance; and filing duplicative and vague grievances. The grievance procedure is designed to be "an effective method of seeking redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement." Policy Directive 03.02.130, Policy Statement. Plaintiff's decision to ignore the grievance procedure undermined the underlying policy of that procedure, and virtually guaranteed that some or all of the grievances would be denied on procedural grounds. Not surprisingly, the MDOC rejected or denied the grievances as procedurally improper. Under these circumstances, plaintiff's grievances are unexhausted, because he deprived the MDOC of a full and fair opportunity to consider the merits of the grievances asserted against defendant West. *See Woodford*, 126 S. Ct. at 2385, 2388.

Accordingly, the court concludes that plaintiff's claims against defendant West should be dismissed for lack of proper exhaustion.

### V.     Conclusion

I respectfully recommend that the motion to dismiss filed by defendants CMS and Hutchinson (docket no. 13) be **GRANTED** and that the motion to dismiss and for summary judgment filed by defendant West (docket no. 28) be **GRANTED**.


Dated:  August 13, 2007                                   /s/ Hugh W. Brenneman, Jr.
                                                                              HUGH W. BRENNEMAN, JR.
                                                                              United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).