UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRY VANDIVER,

    Plaintiff,

Case No. 1:06-cv-547

Hon. Robert J. Jonker

vs.

CORRECTIONAL MEDICAL
SERVICES, INC., *et al.*,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is before the court on defendant Mark West's motion for summary judgment (docket no. 98).

**I.    Introduction**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

### A. Plaintiff's allegations

The facts of this case have been summarized in a previous opinion as follows:

Plaintiff, an insulin-dependent diabetic, filed this action in July 2006 against defendants Correctional Medical Services, Inc. (CMS); Craig Hutchinson, M.D., Senior Regional Director for CMS Specialty Clinics; and Mark West, R.N., the Health Unit Manager (HUM) at the Chippewa Correctional Facility. The complaint alleged that CMS, which contracted with the Michigan Department of Corrections (MDOC) to provide medical services, adopted a policy and custom of cutting costs by delivering substandard medical care to prisoners by, among other things, limiting offsite referrals, orthopedic shoes, and diabetic diets. Plaintiff also claims that the MDOC implemented a policy in 1997 that allocated the cost of "true" orthopedic shoes to health care, while shifting the cost of other recommended shoes to the MDOC institution.

Apart from these allegations of policy and custom, plaintiff asserted claims based on the denial of specialty shoes recommended by podiatrist Dr. Matthew Page in February 2001, and the resulting amputation of two toes on his right foot in November 2002. [FN2] Plaintiff specifically alleged that the recommendation was faxed to Dr. Hutchinson, CMS's Senior Regional Director, who disapproved it despite his personal knowledge of plaintiff's condition from having previously treated plaintiff. Plaintiff claimed that he was informed on February 13, 2001, by RN King and HUM Susan DeBruyn that "a doctor" had reviewed the recommendation and disapproved the specialty shoes. Plaintiff grieved the denial in 2001, which was denied at all three steps, and filed a § 1983 action arising out of these facts. That suit was dismissed on several grounds, including that King and DeBruyn were not served, and for failure to exhaust administrative remedies with respect to CMS and other defendants who were not named at each step of the grievance procedure. *Vandiver v. Martin*, 304 F.Supp.2d 934, 943 (E.D. Mich. 2004).

Plaintiff has also asserted that CMS, Hutchinson, and West discontinued and denied his request for a special diabetic diet in early 2006, resulting in high and low blood sugar levels, blurred vision, and further future amputation. This, plaintiff alleged, was pursuant to a policy of limiting medical care that resulted in deliberate indifference to his serious medical needs. He also claimed that it violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, since a white prisoner who also had poorly controlled insulin-dependent diabetes had been approved for a diabetic diet and transfer to a facility with a dietician. Finally, plaintiff alleged that West told him he was being denied medical treatment in retaliation for having filed another lawsuit against West's friend, Chief Medical Director George Pramstaller, and other medical personnel.

> [FN2]. Although the complaint alleged that the surgery occurred in
> November 2001, plaintiff stated that this was an error and that the
> partial amputation of his right foot occurred in November 2002.

*Vandiver v. Correctional Medical Services, Inc.*, 326 Fed. Appx. 885, 887 (6th Cir. 2009).

### B. Dismissal of the action and remand

This court previously granted dispositive motions by all defendants and dismissed this action on January 10, 2008. *See* docket no. 80. The Sixth Circuit Court of Appeals affirmed the court's dismissal of defendants CMS and Hutchinson, but reversed the dismissal with respect to "the claims against West regarding the denial of a diabetic diet" and remanded these claims for further proceedings. *Vandiver*, 326 Fed. Appx. at 890-91. Accordingly, defendants CMS and Hutchinson are no longer parties to this action, and plaintiff's only claims remaining are those against defendant West for the alleged denial of a diabetic diet.

## II. Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Discussion

#### A. Plaintiff's remaining claims on remand

Plaintiff's remaining claims in the amended complaint on remand are as follows: (1) that HUM West violated the ADA, because plaintiff, a black prisoner with insulin dependent diabetes, did not receive a diabetic diet, while a white prisoner with similar insulin dependent diabetes received a medical transfer order to be at a facility site with a dietician where he could receive a diabetic diet; (2) that HUM West denied plaintiff a diabetic diet in retaliation for plaintiff filing suits against West's friend George Pramstaller, in violation of his First Amendment rights; and (3) that HUM West violated plaintiff's Eighth and Fourteenth Amendment rights. *See Vandiver*, 326 Fed. Appx. at 890-91 ("the claims against West regarding the denial of a diabetic diet are **REMANDED** for further proceedings") (emphasis in original).

#### B. Eighth Amendment claim

It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97

4

(l976).  A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind.  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition.  *Hudson*, 503 U.S. at 8-9.  With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted).  Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety.  *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991).  To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

5

At the time of these incidents, defendant West was the HUM at the Chippewa Correctional Facility. West Aff. at ¶ 1 (docket no. 29-8). As HUM, West's duties included overseeing the health clinic at the correctional facility and supervising the clinic's nurses and support staff. *Id.* HUM West was not authorized to place plaintiff on a diabetic diet:

> A determination regarding the need for an inmate's placement on a diabetic diet is made by the patient's Medical Service Provider, i.e., a physician, physician assistant or nurse practitioner. I am not the plaintiff's Medical Service Provider and do not supervise the Medical Service Provider.

*Id.* at ¶ 3. Because HUM West was a supervisor at the health clinic, not licensed as "a physician, physician assistant or nurse practitioner," and not plaintiff's Medical Service Provider, he could not make the decision to deny plaintiff a diabetic diet in violation of his Eighth Amendment rights. For this reason, plaintiff's Eighth Amendment claim against HUM West fails.

Plaintiff has filed an affidavit in opposition to the motion for summary judgment as allowed under Fed. R. Civ. P. 56(e). *See* Vandiver Aff. (docket no. 103).[1] In his affidavit, plaintiff indicates that HUM West was acting as a Medical Service Provider when he discussed plaintiff's diabetic condition, stating "[a]t the time Mark West told me my diabetes was not under controlled [sic], West was not acting in his capacity as a health Unit Manager but as a nurse because staff [sic] during his personal involvement with me in his individual and personal capacity." *Id.* at ¶ 9.

---

[1] The court notes that plaintiff's affidavit contains significant commentary and argumentative statements, which do not constitute facts based on personal knowledge "that would be admissible in evidence." *See* Rule 56(e)(1). For example: "I am deeply troubled with the mere assumptions by defendant's attorney and the Magistrate Judge. . ."; "The defendant Mark West has decided to assert I said he was working on February 15, 2006 . . ."; "The court and defendant's attorney claim my only issue is the deprivation of my diabetic diet? I have more claims than that . . ."; and, "I maintain Mark West was acting out side of his scope of employment as health unit Manager when he caused these deprivations under color of law" (Vandiver Aff. at ¶¶ 5-8). For this reason, the court will refer only to those portions of plaintiff's affidavit which present facts which appear to be based on personal knowledge which would be admissible in evidence under Rule 56(e)(1).

6

Plaintiff's affidavit is apparently referring to the conversation with HUM West which occurred on February 15, 2006. This conversation, which HUM West states did not occur, forms the basis of plaintiff's Eighth Amendment claim against West.

In an apparent attempt to avoid summary judgment, plaintiff now claims that the conversation with HUM West occurred on a different date:

> At no time have I said nor alleged in any of my pleadings nor Affidavit that [West] was working February 15th. I clearly allege I tired [sic] to resolve my issue with Mark West Jan/Feb 15th, which means all of January (Jan) through (Feb 15th). My last attempt was with Nursing staff on the day of Feb 15th. Why is it so hard for everyone to understand Jan/Feb 15th? Defendant's attorney and Magistrate Judge just read into it what they wanted to read into it.

*Id.* at ¶ 6.

Of course, this is not the case. Plaintiff's new assertion is belied by the record. In Grievance no. URF 06-02-0438-12H ("0438"), the grievance upon which this claim is based, plaintiff identified the "Date of Incident" with HUM West as "2/15/06." *See* Grievance 0438 (docket no. 29-5). While plaintiff may have had conversations with other members of the nursing staff in January and February, 2006, the only remaining defendant in this action is West. Plaintiff's grievance set forth the February 15, 2006 conversation with West in great detail, quoting a number of HUM West's statements, which means that plaintiff was claiming that West had been present, which is directly contrary to today's assertion:

> I premise claims under American With Disabilities Act of 1990 § 2 et seq[;] 42 USCA § 12101 et seq [;] 12131(1)(A)(B); as set forth below:
>
> On the **above date of incident I was informed by Health Unit Manager Mark West** that my Insulin Dependent Diabetic condition was poorly controlled. I explained to Mr. West I should be back on my diabetic diet. His response was "it is my own responsibility to get controlled, with moderation of food choices and the proper exercise." I informed Mr. West that the purpose of the ADA statu [sic] is clearly defined under title II, that "no qualified individual with a disabil [sic] shall

7

by reason of such disability be excluded from participation in or be denied the benefits, services, programs, or activities of a public entity, or b[sic] the subject of discrimination by such entity." **In further discussing this issue with Mr. West,** I proved a white prisoner an insulin dependent diabetic with similar insulin dependent diabetes poorly controlled systems as myself, was her [sic] at URF back February 28, 2005, his insulin dependent diabetes was in poor contr [sic] and he filed grievance for diabetic diet which resulted in URF health Services preparing a transfer order for him to be at a cite [sic] with a dietician and URF health services wrote the white prisoner an ADA diet and snack. The prisoner was transferred to a down-state facility with a dietician.

**Mr. West** in his response **stated:** "I will not address another prisoner's medical chart." **I explained to Mr. West** that I have established a prima facie case under Title II of the ADA, by showing 1) I am a qualified individual with the same disability as prisoner (unnamed at this time) 2) I'm insulin dependent diabetic in poor control; 3) I am being excluded from participation of the same ADA diabetic diet services afforded the white prisoner; 4) I am being discrim [sic] by reason of my disability and my being diabetic. **In response, Mr. West** stated that the ADA statute no longer applies to prisoners here in Michigan. However, that statement is misplaced.

The United States Supreme Court has clearly established and ruled in Pennsylvania Dept of Corrections v Yeskey, 525 U.S. 206 (1998) "the plain Text of Title II of the ADA unambugously [sic] extends to state prison inmates.["] In that case, prisoner Yeskey was excluded from participation in a boot camp program because of his medical history of hypertension. On July 22, 1998, the Director of the Michigan Department of Corrections issued Memorandum [DOM 1998-40] [now DOM 2005-11] acknowledging the Court's ruling and implementing interim procedures for complying with the ADA.

**Mr. West** [sic] **excuse** for not allowing me the same treatment as provided the white prisoner was "You can control your own diabetes by the right food choices and exercise, and by your being self educated already on food choices, but by eating hostiss [sic] cup cakes, and etc., is the reason for your being poor controlled including not exercising.["] However, Mr. West has no evidence in my health record showing I am buying food items from the prisoner store. Nor does he have proof of my not exercising.

In fact, **during West and my verbal conversation** his tone and his demeanor exhibited 'deliberate indifference' and the denial was an [sic] purposeful intent to punish me for being insulin dependent diabetic poorly controlled. Any reasonable person in Mark West's position would after seeing I was poorly controlled [sic] would have written an ADA diet and sanck [sic] and transferred me to a facility with a dietician down-state to assist me in controlling my diabetes.

8

> Despite the fact I show exclusion because one exist by reason of my disability and the fact I show by health services response to the white prisoner I am being treated differently than the white prisoner with similar insulin dependent diabetes poorly controlled.
>
> I am entitled to the same relief as provided the white prisoner with an [sic] medical order for transfer down-state with a dietician and a [sic] ADA diet order written to assist me in controlling my diabetes. (emphasis added)

*Id.* The grievance was denied because HUM West was not at the facility on February 15th "nor was any conversation involving the allegations listed in the body of the grievance formally or informally discussed at any time with the patient by HUM West." *Id.* (Grievance Step 1 Response)

The MDOC, defendant's counsel, this court and the Sixth Circuit Court of Appeals have all addressed plaintiff's claims based upon the administrative exhaustion of Grievance 0438, which involved plaintiff's alleged February 15, 2006 conversation with HUM West. *See* record of Grievance 0438 (docket no. 29-5); Report and Recommendation (docket no. 62); *Vandiver*, 326 Fed. Appx. 885.[2] Both HUM West's affidavit and the MDOC records establish that West was not at the facility on February 15, 2006. Specifically, the correctional facility's Health Service Communication Log establishes that HUM West was out on both February 15th and 16th, 2006. *See* docket no. 29-8. Plaintiff has presented no evidence to support his new claim that the incident occurred at a date other than February 15, 2006. And it would be difficult to assume a mistake by plaintiff here (which he does not even claim), since the grievance was only filled out five days after the supposed conversation. Based on this record, no reasonable jury could believe plaintiff's

---

[2] In reviewing plaintiff's claims on appeal, the Sixth Circuit stated in pertinent part as follows:

> In the first of these [grievances] ("0438") plaintiff claimed that, on February 15, 2006, West told him that his diabetes was poorly controlled but refused plaintiff a medical transfer to a facility where he could receive a diabetic diet.

*Vandiver*, 326 Fed. Appx. at 890.

9

statement that he spoke with HUM West on some date other than February 15th. This court is not required to adopt plaintiff's revised rendition of the facts, which is "blatantly contradicted by the record." *See Scott*, 550 U.S. at 380.

Accordingly, HUM West is entitled to summary judgment on the Eighth Amendment claim.

### C. Retaliation

In order to succeed in a retaliation claim, plaintiff must show: (1) that he engaged in protected activity; (2) that an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that the adverse action was motivated, at least in part, by plaintiff's protected activity. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Assuming that plaintiff engaged in protected activity and that an adverse action was taken against him, he cannot demonstrate the third element, i.e., that HUM West's action was motivated, at least in part, by the protected activity. Even if HUM West was motivated to take adverse action against plaintiff for filing a lawsuit against Dr. Pramstaller, he did not have authority to take the alleged retaliatory action. West was not plaintiff's Medical Service Provider and could not issue medical instructions which denied plaintiff treatment for his diabetes (i.e., a diabetic diet). "The motivations of non-decisionmakers cannot establish a causal connection in a retaliation case." *Echlin v. Boland*, 111 Fed.Appx. 415, 417 (6th Cir. 2004), *citing Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir.2001); *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir.1999).

Furthermore, the fact that HUM West denied Grievance 0438 does not make him a decisionmaker for purposes of a First Amendment claim brought pursuant to § 1983. A prison official whose only role involved the denial of an administrative grievance cannot be liable under

10

§ 1983. *Shehee*, 199 F.3d at 300. "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841 (6th Cir. 2003). *See Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) (observing that the denial of an appeal of a grievance complaining of inadequate medical care is not the same as the actual denial of a request to receive medical care).

Accordingly, HUM West is entitled to summary judgment on the retaliation claim.

**D.     ADA claim**

Finally, plaintiff has alleged that HUM West violated the ADA, which provides in pertinent part as follows:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

Plaintiff has sued HUM West in both his individual and official capacities. As an initial matter, HUM West, as an individual, is not liable for damages for an alleged violation of the ADA. *See Everson v. Leis*, 556 F.3d 484, 501 n. 7 (6th Cir. 2009) ("Title II of the ADA does not [ ] provide for suit against a public official in his individual capacity"); *Powell v. Morris*, 184 F.R.D. 591, 596 (S.D. Ohio 1998) ("[t]here is no individual liability under the ADA"). Plaintiff can, however, maintain an ADA claim against West in his official capacity, because such a claim is "for all intents and purposes, against the state of Michigan as the real party-in-interest." *Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010).

Nevertheless, plaintiff has failed to allege a prima facie case of disability discrimination against HUM West. "To make out a prima facie case under Title II of the ADA [42

11

U.S.C. § 12132], a plaintiff must establish that '(1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability.' " *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005). Even if plaintiff met the first two elements, by demonstrating that his diabetes is a disability and that he is "otherwise qualified" to participate in "services, programs, or activities" (in this case, receiving a diabetic diet), plaintiff does not claim that he is being excluded from receiving a diabetic diet because of an alleged *disability*. Rather, plaintiff claims that he is a black prisoner with insulin dependent diabetes who did not receive a diabetic diet, while a white prisoner with similar insulin dependent diabetes received a medical transfer order to be at a facility site where he could receive a diabetic diet. Plaintiff's claim sounds in race discrimination, not disability discrimination.

Accordingly, HUM West is entitled to summary judgment on the ADA claim.

### IV. Conclusion

I respectfully recommend that defendant West's motion for summary judgment (docket no. 98) be **GRANTED** and that this action be dismissed.


Dated: July 2, 2010                                     /s/ Hugh W. Brenneman, Jr.
                                                        HUGH W. BRENNEMAN, JR.
                                                        United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).